# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LILLIE M. MIDDLEBROOKS,       )
       )
      Plaintiff,       )
       )
    v.       )      **CIVIL ACTION NO. 05-cv-0556 (JDB)**
       )
GORDON R. ENGLAND, SECRETARY )
OF THE NAVY,       )
       )
      Defendant.       )
       )

## MEMORANDUM OPINION

Plaintiff Lillie Middlebrooks brings this action against Gordon R. England, Secretary of the Department of the Navy, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 29 U.S.C. § 2000e-2 et seq. Plaintiff alleges that defendant discriminated against her based on her race, color, gender and national origin when she worked at the National Naval Medical Center (NNMC) in Bethesda, Maryland, from September 2002 to February 2003. Presently before the Court is defendant's motion to dismiss for improper venue or, in the alternative, to transfer to the District of Maryland. Because the Court determines that venue is not proper in the District of Columbia for plaintiff's claim, the Court will transfer the case to the District of Maryland where venue is proper.

## BACKGROUND

The following facts are alleged in plaintiff's complaint. Plaintiff, an African American female of light-brown complexion, was hired by the Military Family Health Center of the NNMC as a registered nurse on September 30, 2002. Compl. ¶¶ 1, 12, 13. Plaintiff's appointment was subject to the completion of a one-year probationary period. Id. ¶ 14.

Plaintiff alleges that, over the course of her six-month tenure with NNMC, her coworkers and supervisors repeatedly insulted her and undermined her ability adequately to perform her duties.  During her first two months of employment, three Caucasian female coworkers repeatedly made insulting and derogatory remarks to her.  Id. ¶¶ 23, 24, 25, 31, 35, 111, 114.  Another Caucasian female coworker falsely accused plaintiff in an e-mail of incompetence and refusal to perform work-related duties.  Id. ¶ 44.  In December 2002, plaintiff's Hispanic male supervisor reassigned her to another staff team, a move that deprived her of a leadership position.  Id. ¶¶ 60, 61, 65, 70.  The loss of the leadership opportunity adversely affected plaintiff's chances for career advancement.  Id. ¶ 72.  One month later, a Caucasian male coworker made false statements concerning plaintiff by e-mail.  Id. ¶ 88.

On February 3, 2003 plaintiff's supervisors confronted her with negative written comments from three coworkers.  Id. ¶¶ 96, 98.  One write-up was authored by an African American male coworker, who plaintiff alleges discriminated against her on the basis of her color.  Id. ¶¶ 99, 106.  Following that meeting, plaintiff's supervisors solicited additional comments from a Caucasian male coworker, who submitted negative remarks concerning plaintiff.  Id. ¶¶ 117, 123.

Also on February 3, 2003 plaintiff treated a patient who had been inadvertently stuck by a dirty needle during an occupational exposure incident.  Id. ¶ 121.  Plaintiff apparently released the patient without initiating post-exposure prophylaxis.  Id. ¶¶ 137, 138.  The next day, it was discovered that the patient's source of exposure was HIV positive.  Id. ¶ 139.  Plaintiff was subsequently berated by her supervisors and her depression worsened.  Id. ¶¶ 31, 35, 142, 149.

Because of these incidents, plaintiff contacted an Equal Employment Opportunity (EEO) counselor on February 6, 2003.  Id. ¶ 153.  When coworkers learned that she had contacted an

EEO counselor, they circulated e-mails accusing her of incompetence and drafted an allegedly

false report concerning the occupational exposure incident.  Id. ¶¶ 156, 157, 158.

Plaintiff filed a formal complaint with the EEO office on February 13, 2003.  Id. ¶¶ 173,

174.  She then faced further harassment from coworkers, and her supervisor submitted a

termination recommendation.  Id. ¶¶ 174, 178.  Plaintiff alleges an additional false memorandum

was submitted at this time concerning her job performance.  Id. ¶ 181.

On February 20, 2003, plaintiff's supervisors again verbally abused and harassed her.  Id.

¶¶ 191, 194.  That same day, a coworker overheard a phone message from an EEO counselor

intended for plaintiff and informed other coworkers of its content.  Id. ¶ 198. Later that day,

plaintiff's supervisors formally recommended her to the Washington Navy Yard HRO for

termination.  Id. ¶¶ 199. Plaintiff was terminated five days later.  Id. ¶ 202.

## ANALYSIS

Defendant argues that venue is improper in the District of Columbia for plaintiff's claim,

and therefore this case should be dismissed or, in the alternative, transferred to the District of

Maryland where venue is proper.  Plaintiff counters that venue is proper in the District of

Columbia.

Venue for Title VII actions is governed by 42 U.S.C. § 2000e-5(f)(3), under which venue

is proper in any of three judicial districts:

> (1) where the unlawful employment practice is alleged to have been committed;
> (2) where the employment records relevant to such a practice are maintained and
> administered; or (3) where the aggrieved person would have worked but for the
> alleged unlawful employment practice.

If the defendant is not found in any district under those provisions, then venue may be based on a

fourth provision-- the location of defendant's principal office.  Id.  This venue statute governs all

-3-

Title VII claims and supercedes any other venue provision governing actions in federal court.

Stebbins v. State Farm Auto. Ins. Co., 413 F.2d 1100, 1102 (D.C. Cir. 1969).

Plaintiff contends that venue is appropriate in this district under both the first and second

provisions of 42 U.S.C. § 2000e-5(f)(3).[1]  The Court's first inquiry focuses on the locus of the

alleged acts of discrimination.  "Courts can determine venue by applying a 'commonsense

appraisal' of events having operative significance."  James v. Booz-Allen & Hamilton, 227 F.

Supp. 2d 16, 20 (D.D.C. 2002) (citing Lamont v. Haig, 590 F.2d 1124, 1134 (D.C. Cir. 1978)).

"Specifically, venue cannot lie in [the District] when a 'substantial part, if not all, of the

employment practices challenged in this action' took place outside the District even when actions

taken in the District 'may have had an impact on the plaintiff's situation.'"  Robinson v. Potter,

2005 WL 1151429 at *3 (D.D.C. May 16, 2005) (citing Donnell v. Nat' l Guard Bureau, 568 F.

Supp. 93, 94 (D.D.C. 1983)).

Plaintiff asserts that her allegedly discriminatory termination was ordered by the

Washington Navy Yard HRO and therefore venue is proper here.  Opp'n at 2.  This argument is

ultimately unpersuasive, however, because the balance of allegedly discriminatory events,

including plaintiff's actual termination and every instance of alleged workplace discrimination,

occurred at the Naval Hospital in Bethesda, Maryland.  Notwithstanding the formal authorization

for her termination then, all alleged discriminatory events took place in Maryland.  Venue is

therefore improper in this district under the first prong of 42 U.S.C. § 2000e-5(f)(3) because,

while the HRO's formal authorization of plaintiff's termination had an impact on her situation, a

substantial part of the allegedly discriminatory events, including her actual firing, took place in

--------

[1]  The third prong of the venue inquiry is not contested in this case.  The parties agree that
"but for" the alleged discriminatory firing, plaintiff would still work in Bethesda, Maryland.

Maryland.  See Donnell, 568 F. Supp. at 94 (holding that, while personnel decisions made in the

District of Columbia impacted plaintiff, venue was improper there because a substantial portion

of the alleged discrimination occurred in Virginia).

Turning to the second prong of the venue inquiry, defendant states that plaintiff's

employment records containing "performance appraisals, disciplinary counseling notes, and

information about other problems" related to the alleged discrimination are located in Bethesda,

Maryland.  Def. Mot. at 6.  Plaintiff responds that the Navy Yard HRO has complete control and

jurisdiction over her employment records, as evidenced by their ability to pull the entirety of her

records when asked to do so by plaintiff's counsel.  Pl. Rep. at 3; Greenberg Decl. at 1-2.

Plaintiff further contends that her Official Personnel Folder (OPF) is administered and

maintained in the District by the HRO.

"Using employment records to process an administrative complaint is not considered

'maintaining and administering' the records for purposes of establishing venue under 42 U.S.C.

§ 2000e-5(f)(3)."  Saran v. Harvey, 2005 WL 1106347 at *3 (D.D.C. May 9, 2005) (internal

citations omitted).  Plaintiff's employment records cannot be considered "maintained and

administered" in the District solely because the HRO was able to process counsel's request for

records.  Plaintiff requested her records from the HRO in pursuit of her EEO claim and

subsequent Title VII action and therefore, applying the standard in Saran, the Court concludes

that the production of her records in the District is insufficient to establish venue here.  See also

Lee v. England, 2004 WL 764441 at *1 (D.D.C. Mar. 9, 2004) (holding that establishing venue

based on the administrative processing of plaintiff's complaint through the Washington Navy

Yard HRO would "sidestep the language of [42 U.S.C. § 2000e-5(f)(3)], which deals not with

administrative processing of the litigation but the maintenance and administration of employment

records relevant to the challenged employment practice").

Furthermore, the second prong of 42 U.S.C. § 2000e-5(f)(3) speaks only to employment

records "relevant to [the alleged unlawful] practice."  See id.  Plaintiff's OPF, located in the

District, contains life insurance information, her Declaration for Federal Employment, her oath of

office and other records pertaining to her employment generally.  Greenberg Decl. at 2.  But all

records relating to the alleged discrimination, including performance appraisals, disciplinary

counseling notes and relevant internal memoranda, are maintained and administered in her local

personnel file in Bethesda, Maryland.  Id.  In light of Congress' clear intent "to limit venue to the

judicial districts concerned with the alleged discrimination," Stebbins, 413 F.2d at 1102, the

location of plaintiff's OPF cannot be the basis for venue in this district.  Looking only to the

location of a plaintiff's OPF would undercut clear Congressional intent by allowing plaintiffs to

establish venue not where the records "relevant to [the alleged unlawful] practice" are kept, but in

any place where employment records of any type can be found.  Therefore, the Court concludes

that the employment records "relevant" to plaintiff's complaint are "administered and

maintained" in Bethesda, Maryland, not in the District of Columbia.  Venue is thus improper here

under the second prong of the venue inquiry.

Although venue is not proper in the District, it is proper in the District of Maryland.  As

discussed, a substantial portion of the operative events pertaining to the alleged discrimination

occurred in Bethesda, Maryland.  Moreover, the employment records relevant to the claim are

maintained and administered in Bethesda, Maryland.  Finally, but for the alleged discrimination,

plaintiff would still work in Bethesda, Maryland.

Pursuant to 28 U.S.C. § 1406(a), "the district court of a district in which is filed a case laying venue in the wrong district shall dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought."  The decision whether to transfer or dismiss is entrusted to the Court's discretion.  See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  In the interest of justice, the Court will transfer this case to the District of Maryland.[2]

## CONCLUSION

For the foregoing reasons, the Court finds that venue over plaintiff's action does not lie in the District of Columbia.  Pursuant to 28 U.S.C. § 1406(a), and in the interest of justice, the Court will transfer this case to the District of Maryland.  A separate order will be issued herewith.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated:   November 2, 2005

_____

[2]  Even if venue were considered proper in this district, the Court would nonetheless transfer this action to the District of Maryland for the convenience of parties and witnesses under 28 U.S.C. § 1404(a).

Copies to:

Ari Taragin
Snider & Fischer, LLC
104 Church Lane
Suite 201
Baltimore, MD 21208
Email: ari@sniderlaw.com
    *Counsel for plaintiff*

John C. Truong
U.S. Attorney' s Office
Public Corruption
555 Fourth Street, NW
Washington, DC 20001
Email: john.truong@usdoj.gov
    *Counsel for defendant*